NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| H.D.V.I. HOLDING COMPANY, INC., | |
| Plaintiff, | Civ. No. 13-118 |
| v. | **OPINION** |
| CDP, LLC; JOSHUA E. TATE; and JAMES R. WATSON, | |
| Defendants. | |

THOMPSON, U.S.D.J.[1]

## **INTRODUCTION**

This matter comes before the Court upon the Motions for Partial Summary Judgment on Counts 1 and 4 and Counts 5, 6, and 7 by Defendants CDP, LLC, Joshua E. Tate, and James R. Watson (collectively, "Defendants"). (ECF Nos. 164, 174.) Plaintiff H.D.V.I. Holding Co., Inc. ("Plaintiff") has also filed a Renewed Motion for Partial Summary Judgment on Count 1. (ECF No. 167.) Each party has opposed the other's Motions. (ECF Nos. 180, 183, 196.) Also before the Court is Plaintiff's Motion to Strike, which Defendants oppose. (ECF Nos. 203, 205.) The Court has decided these Motions based upon the written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, all four Motions are denied.

---

[1] The Honorable Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

1

**BACKGROUND**

**I.     Undisputed Factual History**

Between these the three pending summary judgment Motions there are nine sets of statements of fact and corresponding responses and/or counterstatements.[2] At the outset, the Court notes that the parties *significantly* dispute each other's description of the facts contained in

---

[2] For shorthand and ease of understanding, the Court will refer to these statements and responses by their docket or "ECF" number. The following shorthand will apply:

> ECF No. 166: Defendant CDP's Statement of Material Undisputed Facts in Support of its Motion for Summary Judgment (supporting ECF No. 164)
> ECF No. 168: Plaintiff's Statement of Undisputed Material Facts in Support of its Renewed Motion for Summary Judgment (supporting ECF No. 167)
> ECF No. 181: Defendant CDP LLC's Response to Plaintiff's Statement of Undisputed Material Facts and Defendants' Counterstatement of Facts (response in opposition to ECF No. 168)
> ECF No. 182: Plaintiff's Statement of Undisputed Facts in Opposition to Defendants' Motion for Partial Summary Judgment (response in opposition to ECF No. 166)
> ECF No. 187: Plaintiff's Reply and Objections to Defendant CDP, LLC's Counterstatement of Facts (reply to ECF No. 181)
> ECF No. 190: Defendant CDP's Reply to Plaintiff's Response to CDP's Statement of Material Facts in Support of CDP's Motion for Summary Judgment (reply to ECF No. 182)
> ECF No. 176: Defendants' Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment Re: Negligent Misrepresentation Claims
> ECF Nos. 192, 195: Plaintiff's Response to Defendants' Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment Re: Negligent Misrepresentation Claims and Plaintiff's Counterstatement of Facts (response in opposition to ECF No. 176, these documents appear identical and the Court will hereinafter refer to ECF No. 195)
> ECF No. 199: Defendants' Plaintiff's Response to Defendants' Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment Re: Negligent Misrepresentation Claims and Plaintiff's Counterstatement of Facts (reply to ECF No. 195)

Plaintiff also disputes ECF Nos. 181 and 199 in their entirety. ECF No. 199 will be addressed below as it relates to the negligent misrepresentation claims. As to ECF No. 181, Plaintiff asserts that it lacks supporting exhibits and evidence. ECF No. 181, however, largely reflects Defendants' recitation of facts in its own Rule 56.1 statements for Counts 1 and 4, which Plaintiff opposed, without raising such objection.

these Local Rule 56.1 statements, including the characterization of certain exhibits, the authenticity of various documents, the accuracy of quoted material where citations are incomplete and omit relevant context, and the hearsay nature of certain testimony. The Court has treated each "statement" with caution and relied on the voluminous and repetitive exhibits attached to each filing to validate and support all facts.

This is a breach of contract case based on a Ground Lease ("Lease") executed on November 26, 2008 between Plaintiff Home Depot, H.D.V.I. Holding Company, Inc. as Tenant, and Defendant CDP, LLC as Landlord. (ECF No. 168 ¶ 2; ECF No. 176 ¶ 22.) Relevant to the instant litigation, the Lease included "section 22.30," which provided for the reimbursement of certain tenant costs, as well as an Entire Agreement clause providing that the lease superseded prior representations or agreements. (ECF No. 168 ¶¶ 3–4.) Defendants CDP, LLC, CDP President James Watson, and CDP Vice-President Joshua Tate were constructing a real estate development project in St. Croix named "Island Crossing"; they solicited Plaintiff to build and operate a Home Depot store as the anchor of this shopping center. (ECF No. 168 ¶¶ 1, 12–13.) Plaintiff worked with Defendants, through real estate manager Kevin Workman, to develop plans for and construct the new store. (ECF No. 166 ¶¶ 1–2.) During this negotiation process, Robert Chubb represented Plaintiff as outside transactional counsel. (ECF No. 176 ¶ 14.)

On July 1, 2008, Defendants applied for Tax Increment Financing ("TIF") under 29 V.I.C. § 22 ("TIF Act") through the Virgin Islands Economic Development Authority ("EDA"), and public hearings on CDP's application were held on August 22, 2008 and September 10, 2008. (Certification of Eligibility of Island Crossing Shopping Center as TIF Area and for TIF Financing, Defs.' Ex. A, ECF No. 176-1.) On September 15, 2008, Watson wrote to Workman summarizing various negotiations to that point and informing Workman that Island Crossing was

3

TIF-certified, and on September 18, 2008, through Bill Number 27-0253, the Virgin Islands legislature approved the TIF Plan, expressly providing for a Home Depot at Island Crossing. (ECF No. 166 ¶¶ 14–15, 18; ECF No. 168 ¶ 10; *see also* Sept. 15, 2008 Letter, Defs.' Ex. G, ECF No. 166-7.) Pursuant to the TIF Legislation, a Development Agreement bound CDP and the Government of the Virgin Islands, representing the availability of TIF Funds for Plaintiff and this project; on September 30, 2008, Watson sent Plaintiff this Development Agreement. (ECF No. 176 ¶¶ 4, 17.) TIF financing is expressly "subject to Developer providing evidence to the EDA supporting the qualification of such expenditures for TIF reimbursement as required by this Term Sheet, the [V.I. TIF Act] and Federal Tax Law, as applicable." (ECF No. 166 ¶ 22 (alteration in original) (internal citations omitted); ECF No. 176 ¶ 13.) Plaintiff claims that it proceeded with negotiations for the St. Croix store relying on representations by Defendants "regarding the availability of TIF funds." (ECF No. 176 ¶ 1 (quoting Compl. ¶ 10, ECF No. 1).)

On October 1, 2008, Chubb emailed Sandra Watts, outside counsel for Defendants, a proposed draft lease that included a new section 22.30 of the Lease. (ECF No. 166 ¶ 22; ECF No. 168 ¶ 14.) Watts then spoke with Chubb by phone and asked for a revision to section 22.30 reflecting that proceeds of the TIF would be used to reimburse costs. (ECF No. 166 ¶ 25.) On October 3, 2008, Chubb sent an edited/blacklined draft to Watts, noting in his cover email that the draft reflected their discussion and changes she had proposed in a preceding telephone conversation. (ECF No. 166 ¶¶ 29, 32; ECF No. 182 ¶ 32; ECF No. 168 ¶ 15.) Chubb sent another Lease draft on October 16, 2008, and in response, Watts's assistant sent Chubb Defendants' proposed draft. (ECF No. 166 ¶ 41; ECF No. 168 ¶ 16.) Chubb reviewed the draft and responded with additional comments, noting that the lease "looks good." (ECF No. 166 ¶ 46.) On November 26, 2008, the final version of the Ground Lease was executed and signed,

including section 22.30 (with a scrivener's error) and the attached TIF Legislation and Plan. (*Id.* ¶¶ 47–48.) The Lease afforded Plaintiff an inspection period that was extended to January 23, 2009, during which it could terminate the lease for any or no reason with a $100 payment. (ECF No. 166 ¶¶ 50–51.) On January 27, 2009, the parties entered into a Restriction and Easement Agreement. (ECF No. 168 ¶ 19.)

The Lease was terminated on March 9, 2009 pursuant to section 18.3 of the Lease because Defendants had not timely received a building permit. (ECF No. 166 ¶ 54.) Subsequently, on March 16, 2008, the parties reinstated the Lease by executing the Reinstatement of and Second Amendment to Ground Lease. (ECF No. 168 ¶ 20; ECF No. 176 ¶ 31.) Through Plaintiff's internal processes, Home Depot's Real Estate Executive Committee ("REEC") had to approve the project before construction could begin. (ECF No. 166 ¶ 5.) Additional reinstatements and extensions of the contingency period followed to afford time for REEC approval. The Third Amendment was executed on May 11, 2009; the Fourth Amendment was executed on June 23, 2009; and finally, the Fifth Amendment was executed on July 31, 2009. (Fifth Am. to Ground Lease, Pl.'s Ex. N, ECF No. 183-15.) Workman submitted an executive deal summary/pro forma to Plaintiff's REEC for consideration, and on July 24, 2009, REEC approved the project. (ECF No. 166 ¶¶ 62, 66–67, 71; Executive Summary for REEC, Defs.' Corrected Ex. DD, ECF No. 190-1.) On September 15, 2011, Plaintiff's store opened at Island Crossing and has since remained open for business. (ECF No. 168 ¶ 5.)

Through the construction and opening of the store, Plaintiff "incurred soft costs with respect to the Lease, the Development Rider and the Project . . . as well as hard and soft costs with respect to the design, construction and installation of the Fire/Storm Water Tank," as defined by section 22.30 of the Lease. (*Id.* ¶ 6.) On December 28, 2011, Plaintiff's counsel

5

Debra Thompson submitted a letter with supporting documents to Defendants requesting reimbursement pursuant to section 22.30 in the amount of $2,109.306.00. (ECF No. 166 ¶ 79; ECF No. 168 ¶ 7.) She sent two additional demand letters on July 18, 2012 and June 20, 2013. (ECF No. 166 ¶¶ 80–81.)

## II. Procedural History

On December 23, 2013, Plaintiff filed this action pleading: (1) Breach of Contact, (2) Quantum Meruit, (3) Unjust Enrichment, (4) Reformation of a drafting mistake in section 22.30, (5) Negligent Misrepresentation against CDP, (6) Negligent Misrepresentation against Tate, and (7) Negligent Misrepresentation against Watson. (*See generally* Compl.) On May 4, 2015, the Honorable John E. Jones granted in part Defendants' motion to dismiss, dismissing Counts 2 (quantum meruit) and 3 (unjust enrichment) of Plaintiff's Complaint. (ECF No. 44.)

After extensive discovery, on October 16, 2015, Plaintiff filed its first motion for partial summary judgment. (ECF No. 62.) That motion was continued, and additional discovery disputes persisted, accompanied by numerous extensions of time. On May 2, 2017 Defendants moved for partial summary judgment as to Counts 1 and 4 (ECF No. 164), and that same day, Plaintiff moved for partial summary judgment as to Count 1 (ECF No. 167). On June 5, 2017, Defendants moved for partial summary judgment as to Counts 5, 6, and 7. (ECF No. 174.) Defendants opposed Plaintiff's Motion for Partial Summary Judgment on Count 1. (ECF No. 180.) Plaintiffs opposed both of Defendants' Motions (ECF Nos. 183, 196), and Defendants replied to said opposition (ECF Nos. 188, 200). On September 29, 2017, Plaintiff filed a motion to strike Defendants' Reply to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, or alternatively, to file its own responsive statement. (ECF No. 203.) Defendants

opposed. (ECF No. 205.) This case was reassigned to the Honorable Anne E. Thompson on April 5, 2018. (ECF No. 207.) Judge Thompson held a status conference on April 13, 2018. (ECF No. 208.) These four Motions—three Motions for Summary Judgment and one Motion to Strike—are presently before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

I.      **Counts 1 and 4: Breach of Contract and Reformation**

Plaintiff's breach of contract claim was well-summarized by Judge Jones in his opinion on Defendants' motion to dismiss:

> Home Depot contends that the phrase unambiguously provides CDP two options of payment to Home Depot; either pay Home Depot from CDP's own funds or cause Home Depot to be reimbursed from TIF funds. Home Depot contends that since TIF funds were not available, CDP must pay Home Depot's costs from its own pocket.

(Op. at 9, ECF No. 44.)

Defendants advance four arguments for summary judgment on breach of contract and reformation, jointly: (1) the contract and parties' accompanying intent are clear that any reimbursement under section 22.30 would be from TIF funds; alternatively; (2) to the extent Plaintiff attached a different meaning to section 22.30, Defendants' interpretation prevails because Defendants did not know of any such alternative; (3) the provision is unenforceable for lack of mutual assent; or (4) Plaintiff's damages are limited to $100 under the lease because it could have withdrawn if it was concerned about reimbursements or funding. (Defs.' Br. at 16, ECF No. 165.)[3] In Plaintiff's Motion for Summary Judgment on Count 1 it claims that the reimbursement provision is unambiguous on its face and presents no latent ambiguity— providing that either Defendants reimburse Plaintiff or cause a reimbursement via TIF funds— and should be interpreted as such, and in the alternative, Defendants must reimburse Plaintiff regardless of the availability of TIF funds. (Pl.'s Br. at 5; *see also* Pl.'s Opp'n at 5, ECF No.

---

[3] In their reply brief, Defendants also assert that Plaintiff improperly raises a new breach of contract claim, related to Defendants' alleged missteps in securing TIF funds, not found within its Complaint. (*See* Defs.' Reply at 67, ECF No. 188.) The Court will not focus on the argument of either party, as this claim was not described in the original moving papers.

183.) In opposition to Plaintiff's Motion, Defendants respond to Plaintiff's claims, particularly emphasizing that the doctrine of last antecedent does not control, there are many indicia supporting an interpretation contrary to that Plaintiff adopts, and that Plaintiff presents a limited, biased picture of the facts. (*See generally* Defs.' Opp'n, ECF No. 180.)[4]

A breach of contract claim has four elements; an agreement or contract, a duty created by said agreement, breach of the duty, and resulting damages. *Chapman v. Cornwall*, 58 V.I. 431, 437 (2013); *United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 707 (2011) (quoting *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 134–35 (2009)). "To conclude that a party is entitled to judgment as a matter of law, the Court must first determine whether 'the contract is so clear that it can be read only one way.'" *Day v. White*, 2015 WL 5735787, at *6 (D.V.I. Sept. 30, 2015) (quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073–74 (3d Cir. 1997)). Whether the contract is ambiguous is a question of law, but "if the terms are ambiguous, the issue of the meaning of the terms becomes a question of fact." *United Corp.*, 55 V.I. at 707.

Under Virgin Islands law, courts typically do not consider extrinsic evidence where the terms are unambiguous. *White v. Spenceley Realty, LLC*, 53 V.I. 666, 678 (2010). Accordingly, a court must first "construe the contract in the light of the plain meaning of its words." *Citibank, N.A. v. Chammah*, 44 V.I. 85, 90 (V.I. Terr. 2001). "[T]o decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear . . . . Before making a finding concerning the existence or absence of an ambiguity, we consider the contract language . . . and the extrinsic evidence offered in support of each interpretation," including "the conduct of the parties that reflects their understanding of the

---

[4] Virgin Islands law, as state law, governs this contract issue. *See Steigerwalt v. Terminix Int'l Co., LP*, 246 F. App'x 798, 802 n.2 (3d Cir. 2007); *White*, 53 V.I. at 673 n.3 (quoting 1 V.I.C. § 4)).

contract's meaning." *White*, 53 V.I. at 678 (omissions in original) (quoting *Teamsters Indus. Emps. Welfare Fund. v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 153 (3d Cir. 1993)); *see also Sunshine Shopping Ctr. v. Kmart Corp.*, 85 F. Supp. 2d 537, 540 (D.V.I. 2000) ("[T]he Third Circuit recognizes that a 'determination as to whether the language of an agreement is unambiguous may not be possible without examining the context in which the agreement arose.'"); *see* Restatement (Second) of Contracts § 202(1) (Am. Law Inst. 1981) ("Words and other conduct are interpreted in light of all the circumstances.").[5] The intent of the parties is determined by their objective manifestations. *Finley v. Mole*, 2015 WL 1541126, at *4 (D.V.I. Apr. 1, 2015). Where a contract remains ambiguous considering the extrinsic evidence, summary judgment is defeated. *See White*, 53 V.I. at 679; *see also Day*, 2015 WL 5735787, at *6.

The essential provision at issue in this case is section 22.30 of the Ground Lease that deals with the reimbursement of certain costs to Plaintiff, as Tenant. The final version of the Ground Lease, signed on November 26, 2008—subsequently made effective again through reinstatement (*see* Fifth Am. to Ground Lease, Pl.'s Ex. N, ECF No. 183-15)—reads as follows,

> Reimbursement of Tenant Costs. Provided Tenant has opened for business at the Premises and has remained open for a period of ninety (90) days, *Landlord shall reimburse cause Tenant to be reimbursed from funds available under the TIF Plan* within thirty (30) days of receipt of invoice accompanied by supporting back-up required by the TIF Plan (a) the actual soft costs incurred by Tenant with respect to this Lease, the Development Rider and the Project, including, without limitation, all architectural and engineering fees, legal fees, permit and approval costs and fees, and other consultant fees in an amount not to exceed $1,371,383.00 and (b) the actual hard and soft costs incurred by Tenant with respect to the design, construction and installation of the Fire/Storm Water Tank (including without limitation the tank, all related foundations, slab, piping, equipment and other associated facilities).

---

[5] "All of the ALI Restatements of the Law (thus including the Restatement (Second) of Contracts ('Restatement')) have been adopted as definitive sources of rules of decision by the Virgin Islands Legislature." *James v. Zurich-Am. Ins. Co.*, 203 F.3d 250, 255 (3d Cir. 2000).

(Ground Lease ¶ 22.30, Pl.'s Ex. A, ECF No. 170-1 (emphasis added to essential language).)

The scrivener's error in the phrasing "Landlord *shall reimburse cause Tenant to be reimbursed from funds available under the TIF Plan*" (*id.*), presents a patent, rather than latent, ambiguity leaving the provision to disputable interpretation. Accordingly, the Court must consider whether, as a matter of law, the provision may be deemed unambiguous in light of extrinsic evidence. *Cf. McDonald v. Davis*, 2009 WL 580456, at *6 (D.V.I. Mar. 5, 2009); (Pl.'s Br. at 7).

Section 22.30 was first added to the Lease on October 1, 2008. As shown with track changes (blacklines and strikes), however, this provision took many, instructive forms:

- "Provided Tenant has opened for business at the Premises, Landlord shall within thirty (30) days of receipt of invoice accompanied by reasonable supporting back-up reimburse Tenant the actual soft costs incurred by Tenant with respect to this Lease, the Development Rider and the Project, including, without limitation . . . ." (Oct. 1, 2008 Email and Ground Lease Draft, Pl.'s Ex. F, ECF No. 170-6 (draft sent by Plaintiff, first version to include this provision); Defs.' Ex. H, ECF No. 166-8 (same email and draft).)

- "Landlord shall cause Tenant to be reimbursed from funds available under the TIF Plan within thirty (30) days of receipt of invoice accompanied by reasonable supporting back-up reimburse Tenant required by the TIF Plan the actual soft costs incurred by Tenant . . . ." (Oct. 3, 2008 Email and Ground Lease Draft ¶ 22.30, Pl.'s Ex. G, ECF No. 170-7 (edits by Plaintiff's counsel in response to parties' conference call); Defs.' Ex. L, ECF No. 166-12 (same email and draft).)

- "Landlord shall reimburse tenant (or cause Tenant to be reimbursed from funds available under the TIF Plan) within thirty (30) days of receipt of invoice accompanied by reasonable supporting back-up reimburse Tenant required by the TIF Plan . . . ." (Oct. 16, 2008 Email and Ground Lease Draft ¶ 22.30, Pl.'s Ex. H, ECF No. 170-8 (edits by Plaintiff's counsel); Defs.' Ex. M, ECF No. 166-13 (same email and draft).)

The extrinsic evidence makes clear that the error in the final version occurred when the parentheses were removed: as the Court already concluded and the parties agreed, "the words 'Tenant or' were mistakenly omitted." (Op. at 7, ECF No. 44; ECF No. 166 ¶ 42). Acknowledging this mistake, however, does not conclusively supply the meaning of the

11

provision, such that reformation is warranted or that the breach of contract claim is conclusively decided. (*See* Pl.'s Opp'n at 2–3.) Plaintiff argues that the change between the final and penultimate drafts was a "mere stylistic edit" (Pl.'s Br. at 5–6); therefore, the reformed version, as agreed by the parties, should read "Landlord shall reimburse Tenant or cause Tenant to be reimbursed from funds available under the TIF Plan" (ECF No. 182 ¶ 42). Conversely, Defendants assert that the removal of the parentheses was an active rejection of Plaintiff's "attempt to confine the qualifying words 'from funds available under the TIF Plan' to the last antecedent" (Defs.' Opp'n at 12, ECF No. 180), and although Defendants may have agreed to the reformation, they did so "with the understanding that the language meant, as agreed to by the parties during the underlying transaction, that any reimbursements to Home Depot would only come from TIF funds" (ECF No. 190 ¶ 42).

With this discord, the Court cannot simply rely on the doctrine of last antecedent as Plaintiff encourages. To do so requires the Court to apply the doctrine to this altered version based on assumed mistakes and presumed intent, or to apply the doctrine to an earlier iteration of section 22.30. (*See* Pl.'s Opp'n at 6.)[6] Furthermore, "the rule of the last antecedent, like most cannons of construction, is not absolute." *Rojas v. Attorney Gen. of the U.S.*, 728 F.3d 203, 214 (3d Cir. 2013) (citing *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). Despite Plaintiff's framing

---

[6] "The doctrine of the last antecedent teaches that qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding and not to others more remote." *United States v. Hodge*, 321 F.3d 429, 436 (3d Cir. 2003) (internal citations and quotations omitted); *see also Flagstar Bank, FSB v. Hart*, 2011 WL 1434884, at *3 n.3 (D.V.I. Apr. 14, 2011). Applying this doctrine to the previous iterations or the reformed version, Plaintiff would encourage the Court to conclude that "available under the TIF Plan" only modifies the clause "cause Tenant to be reimbursed" but does not apply to the phrasing "Landlord shall reimburse Tenant." (Pl.'s Br. at 6.)

of the case, Defendant has presented other "indicia of meaning" which the Court must consider. *Barnhart*, 540 U.S. at 26; (*cf.* Pl.'s Opp'n at 7).

The evolution of 22.30 demonstrates a transition from the general to the more specific. The Court can accept Plaintiff's assertion that, "[a]s originally drafted, there can be no doubt as to its meaning: CDP was to reimburse Home Depot for its Soft Costs" (*id.*), but subsequent drafts eclipse this certainty. As the provision became more specific, two alternative interpretations arose: (1) Defendants would reimburse soft costs by way of funds under the TIF Plan, or (2) Defendants would reimburse soft costs, either directly or by way of funds under the TIF Plan. Thus, the provision remains ambiguous. *See Sunshine Shopping Ctr.*, 85 F. Supp. 2d at 540 ("A contract provision is considered ambiguous if it is susceptible to two reasonable alternative interpretations."). Other extrinsic evidence, including emails, letters, and deposition testimony, shed light on the parties' intentions.

Defendants consistently urge that the TIF Plan would be the sole source of reimbursement. They emphasize letters that explained to Plaintiff that the EDA would be the final arbiter of reimbursements. (*See* July 13, 2009 Email, Defs.' Ex. AA, ECF No. 166-27 ("With respect to any TIF eligible costs, the EDA will ultimately determine what is, and is not, a TIF eligible item, and therefore the supporting documentation to obtain reimbursement will ultimately be up to them.").) They rely on the deposition testimony of Watts, who asserted that after talking to Defendants, she "was told to revise the language of this 22.30 to ensure that the reimbursement came from TIF proceeds" (Watts Dep. 62:10–14, Defs.' Ex. J, ECF No. 166-10), which she then conveyed to Chubb, making clear that "reimbursements needed to come from the TIF" (*id.* 63:4–8). Likewise, Defendants argue that Chubb's communications convey that Plaintiff understood the reimbursements would only come from the TIF Plan, such as his email

13

accompanying the first draft of section 22.30 noting, "It is also our understanding that so long as we open, our soft costs will be reimbursed (as part of the TIFF). Kevin confirmed the same with Jim Watson." (Oct. 1, 2008 Email and Ground Lease Draft, Pl.'s Ex. F, ECF No. 170-6; Defs.' Ex. H, ECF No. 166-8.)

Defendants also emphasize the comment Workman included in the final REEC proposal/pro forma, according to which "The Landlord will also reimburse HD for all soft costs associated with the development which is about $1.3M. The payment will be made with TIF funds and payable 90 days after the CO is issued." (Executive Summary for REEC[7] ¶ 17, Defs.' Ex. BB, ECF No. 166-28; *see also* ECF No. 166 ¶¶ 65–66; Payne Dep. 23:24–24:4, Defs.' Ex. B, ECF No. 166-2.) Finally, Defendants highlight that the TIF legislation, Plan, and Term Sheet were incorporated into the Lease and argue that to accept Plaintiff's interpretation would render these inclusions superfluous. (Defs.' Opp'n at 4, ECF No. 180 (quoting *Day*, 2015 WL 5735787, at *8 n.17).)

On the other hand, discussing section 22.30 at deposition, Chubb explained that Plaintiff "had expected this money to come from the developer one way or the other." (Chubb Dep. 16:11–22, Defs.' Ex. I, ECF No. 166-9.) And this understanding is reflected in his generalized references to Defendants' obligation to reimburse Plaintiff costs up to the $1,371,383 ceiling. (Feb. 25, 2008 Email, Defs.' Ex. S, ECF No. 166-19 (discussing "open issues"); *see also* July 10, 2009 Email, Defs.' Ex. Z, ECF No. 166-26.) Additionally, in Watson's letter to Workman informing him that the Island Crossing shopping center was TIF-certified, Watson wrote, "The St. Croix Home Depot[] is fully subsidized by CDP in several ways. First, we are making a $1.4

---

[7] Plaintiff has clarified that this document is not the "Executive Summary," but rather a financial analysis or pro forma. The REEC uses this information, nonetheless, in reaching a decision. (ECF No. 182 ¶ 6.)

14

million direct subsidy payment to Home Depot upon completion and opening of the St. Croix store. This payment serves to cover soft costs incurred by Home Depot in the development of the St. Croix store." (Sept. 15, 2008 Letter, Defs.' Ex. G, ECF No. 166-7; Pl.'s Ex. E, ECF No. 170-5.) This evidence could imply that Defendants intended to directly cover Plaintiff's costs, or at least ensure they were covered regardless of other externalities. Plaintiff also asserts that Defendants' intent was elucidated when they discussed payment for the Water Tank and to interpret soft costs and the water tank differently would contradict those terms (Pl.'s Br. at 15), but the Court declines to entertain this argument, as the parties treated the fire/storm water tank as a distinct item and issue throughout much of the negotiation and drafting process.

  Finally, there is evidence that can be construed to support either interpretation. For example, reflecting on the final version of section 22.30 and its reference to the TIF Plan, Chubb said that he "believe[d] that the developer was financing its reimbursement obligations through the TIF." (Chubb Dep. 65:2–5, 66:12–17, Defs.' Ex. I, ECF No. 166-9; Pl.'s Ex. E, ECF No. 183-6 (same deposition and citations).) This could imply that reimbursements were to be exclusively paid through the TIF Plan, or that Defendants intended to utilize the TIF Plan to assist in the payment of reimbursements to Plaintiff. Similarly, in the context of a single demand letter Debra Thompson sent to Defendants seeking reimbursement, she noted that "Tenant is entitled to reimbursement from the TIF Plan," but also emphasized that Plaintiff believed it would be contrary to the Lease terms if Defendants did not reimburse these funds simply because they were not approved or available under TIF. (July 18, 2012 Letter, Defs.' Ex. II, ECF No. 166-35.) Additionally, both parties assert that to adopt the other's interpretation would render part of the phrase superfluous. Either the portion "Landlord shall reimburse Tenant" is redundant and unnecessary if reimbursement were limited to TIF funds, or alternatively, the

15

phrase "cause Tenant to be reimbursed" is redundant and unnecessary if Defendants were obligated to reimburse Plaintiff with or without TIF funds. (*See* Defs.' Br. at 16–17; Pl.'s Opp'n at 7–8.)

The foregoing discussion represents just a small portion of the extrinsic evidence on which the parties rely. However, even this sampling demonstrates a significant dispute of material fact as to the intent of the parties regarding how Plaintiff would be reimbursed under section 22.30 for its soft construction costs. The meaning of the provision remains ambiguous, and based on the disputed facts, the Court cannot conclude, as Defendants urge, that Defendants were unaware of Plaintiff's competing interpretation. Yet the extrinsic evidence and disputed facts do not make clear that the provision is unenforceable for lack of mutual assent. Accordingly, the meaning of section 22.30 and thus whether it was breached should be left to the jury, and the Court cannot grant summary judgment in either party's favor on Count 1. *Cf. Day*, 2015 WL 5735787, at *6 ("Where there is no factual dispute and the contract, with the extrinsic evidence, unambiguously indicates that one party is entitled to judgment as a matter of law, summary judgment in that party's favor is appropriate."). For the same reasons, the Court cannot grant summary judgment for Defendants on Count 4 with respect to reformation of section 22.30.

## II. Counts 5, 6, and 7: Negligent Misrepresentation

Counts 5 through 7 assert that CDP, through Watson and Tate, made misrepresentations in their own self-interest regarding the reimbursement of soft costs under TIF, pleading that the "representation that the Project Soft Costs and Water Tank Costs described in paragraph 22.30 of the Lease would be reimbursable from TIF funds was both material and false." (Compl. ¶¶ 47, 52; *see also id.* ¶ 57.) In support of summary judgment, Defendants argue that: (1) the Entire Agreement clause bars reliance on these alleged prior misrepresentations predating the lease

16

(Defs.' Br. at 14, ECF No. 175); (2) Plaintiff cannot point to any specific express representations (*id.* at 16–17); (3) the alleged representations are not actionable because they are predicated on future events that may never come to fruition (*id.* at 18–19); and (4) a sophisticated party like Plaintiff cannot claim justifiable reliance on such representations (*id.* at 20–22). In opposition, Plaintiff asserts that the Entire Agreement clause does not have the effect of a non-reliance clause, and there were express representations on which it reasonably relied. (*See generally* Pl.'s Opp'n, ECF No. 196.)

> In the Virgin Islands, negligent misrepresentation occurs where
>
> [O]ne who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest, supplies false information for the guidance of others, is subject to liability for pecuniary loss caused to those others due to the others' justifiable reliance on the information, but only if he or she failed to exercise reasonable care or competence in obtaining or communicating the information.

*Merch. Commercial Bank v. Oceanside Vill., Inc.*, 64 V.I. 3, 11 (V.I. Super. Ct. 2015); *see also Addie v. Kjaer*, 2009 WL 453352, at *2 (D.V.I. Feb. 23, 2009) (describing five similar elements: a false representation, that defendant knew or should have known to be false, that plaintiff relied upon, causing plaintiff to suffer loss, and defendant did not exercise care in this process). The representations must be actual, express, and factual, rather than related to future events that may never occur. *Addie*, 2009 WL 453352, at *2 (quoting *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20–21 (2d Cir. 2000)). Except where fraud or incompetence are alleged, "a person has a duty to read a contract before signing it and his failure to do so will not excuse his ignorance of the contents." *Barber v. R&R Realty, Inc.*, 2017 WL 1181522, at *5 (V.I. Super. Ct. Jan. 23, 2017) (internal citations omitted).

Once again, material, genuine issues of fact permeate both parties' briefs and statements of material fact, as evidenced by the disputed Rule 56.1 statements and Plaintiff's Motion to

Strike or in the Alternative, for Leave to File a Sur-Reply to "Defendants' Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment re: Negligent Misrepresentation Claims and Plaintiff's Counterstatement of Facts" [DN 199]. (ECF No. 203.) Plaintiff argues that this document was improperly filed, does not comply with the Local Rules, and inappropriately advances legal argument. (*See generally* Pl.'s Br., ECF No. 204.) Defendants opposed. (ECF No. 205.) The Court denies this Motion, and Plaintiff is not permitted to file any additional responsive statement. As noted above, *see supra* Undisputed Factual History, the Court received nine different statements of fact and responses thereto in support of these Motions, which are largely repetitive. The Court also received voluminous exhibits—which each party attached to their moving papers, opposition briefs, statements of fact, *and* responses to statements of fact—to consider and verify the Rule 56.1 statements. Moreover, some of the problems Plaintiff complains of for ECF No. 199, notably legal argument and purported clarifications, are found in other responsive statements of fact on this docket. The Court has approached all such statements with caution and will continue to do so here.

The parties dispute two essential elements of a negligent misrepresentation claim. First, the parties dispute whether any express representations were made by Defendants. (*Compare* Defs.' Br. at 16–17 (asserting no representations about the actual costs and their eligibility for reimbursement were made to Plaintiff), *and* Defs.' Reply at 9–10, ECF No. 200 (claiming that neither the September 30, 2008 Development Agreement nor July 2009 emails are misrepresentations), *with* Pl.'s Opp'n at 5 (describing the July 15, 2009 email from Tate as a clear express representation and looking to similar deposition testimony); *see also* ECF No. 195 ¶ 18 (disputing whether the Development Agreement, TIF Plan, and Term Sheet guarantee reimbursement); ECF No. 195 ¶¶ 24–26 (disputing whether Defendants represented that any of

Plaintiff's specific costs would be eligible for reimbursement and whether TIF Funds would be available).)

Second, the parties dispute the very nature of these representations, specifically whether they related to the future coverage of soft costs through the TIF Plan contingent on EDA approval and fund availability, or whether they concerned contemporaneous issues allegedly completed by Defendants, such as costs budgeted for TIF funding. (*Compare* Defs.' Br. at 19 (claiming that representations that future costs would be reimbursable with TIF funds "that may, or may not, be available in the future, does not constitute an actionable misrepresentation"), *and* Defs.' Reply at 11 (claiming that the misrepresentations Plaintiff describes were simply affirmations that all reimbursements would be decided by the EDA), *with* Pl.'s Opp'n at 7 (describing representations to be the fact that Plaintiff's "soft costs had been identified as eligible in the TIF legislation . . . included in the TIF budget . . . and eligible for reimbursement"); *see also* ECF No. 199 ¶¶ 33–34.)

The nature of these underlying representations, and whether such representations were made at all, are essential aspects of all three Counts of Negligent Misrepresentation. The Court must construe these facts in Plaintiff's favor, and doing so, there are significant disputes such that the Court cannot award summary judgment for Defendants on Counts 5, 6, and 7.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motions for Partial Summary Judgment, with respect to Counts 1, 4, 5, 6, and 7 collectively, are denied; Plaintiff's Renewed Motion for Summary Judgment is denied; and Plaintiff's Motion to Strike is denied. An appropriate order will follow.

Date: June 29, 2018    */s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.